IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

JOHN E. SCOTT,

    Plaintiff,

v.                                                CASE NO. 2:06-cv-00153

MICHAEL J. ASTRUE,
Commissioner of Social Security[1],

    Defendant.

## MEMORANDUM OPINION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for children's Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. This case is presently pending before the court on Plaintiff's Motion for Summary Judgment and Defendant's Brief in Support of Judgment on the Pleadings. Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, John Scott (hereinafter referred to as "Claimant"), through his mother, Lesia Scott, filed an application for child's SSI benefits on August 22, 2003, alleging disability as of January 15, 2000, due to leg impairments and asthma. (Tr. at 47-49, 54.)

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted for Linda S. McMahon as the defendant in this action.

The claim was denied initially and upon reconsideration. (Tr. at 29-31, 34-36.) On July 16, 2004, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 37.) The hearing was held on November 3, 2005, before the Honorable William B. Lissner. (Tr. at 336-52.) By decision dated December 23, 2005, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-21.) The ALJ's decision became the final decision of the Commissioner on February 2, 2006, when the Appeals Council denied Claimant's request for review. (Tr. at 5-7.) On February 28, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

A child is disabled under the Social Security Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). Under the regulations in force during all times relevant to Claimant's claim, the ALJ must determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b) (2005). If the child is, he or she is found not disabled. Id. § 416.924(a). If the child is not, the second inquiry is whether the child has a severe impairment. Id. § 416.924(c). An impairment is not severe if it constitutes a

2

"slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." Id. If a severe impairment is present, the third and final inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.924(d); see also 20 C.F.R. § 416.926a (2005). If the claimant's impairment meets or functionally equals the requirements of Appendix 1, the claimant is found disabled and is awarded benefits. Id. § 416.924(d)(1). If it does not, the claimant is found not disabled. Id. § 416.924(d)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 15.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of asthma and obesity. (Tr. at 15.) At the third and final inquiry, the ALJ concluded that Claimant's impairments do not meet or functionally equal the level of severity of any listing in Appendix 1. (Tr. at 16-21.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular

3

> conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was nine years old at the time of the administrative hearing. (Tr. at 339.) Claimant was in the third grade and was a homebound student. (Tr. at 339.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

On October 2, 2003, Claimant's kindergarten teacher completed a Questionnaire on which she indicated that Claimant has no

problems acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects and caring for himself. She noted that while Claimant has asthma, he had never had an asthma attack in her care. (Tr. at 74-81.) Claimant's kindergarten teacher also indicated Claimant was on the kindergarten level in reading, math and written language. (Tr. at 82.)

The record includes evidence of emergency room visits for complaints related to Claimant's asthma. (Tr. at 148, 150-51, 153-54, 156-57, 159-60, 162, 167-68, 180-81.)

The record includes treatment notes from Robert E. Pollard, M.D. dated November 17, 2000, through June 6, 2003. Claimant was initially referred for obstructive sleep apnea. On March 17, 2003, Dr. Pollard noted that Claimant had chronic rhinitis and chronic sinusitis, but was not currently suffering from obstructive sleep apnea. (Tr. at 102.) On March 28, 2003, Dr. Pollard noted that the results of a CT scan and recommended an adenoidectomy, though he did not recommend a tonsillectomy. (Tr. at 101.) On May 30, 2003, Claimant underwent an adenoidectomy. (Tr. at 99.) On June 6, 2003, Dr. Pollard noted that Claimant recovered well from the surgery. (Tr. at 98.)

On January 6, 2004, a State agency medical source completed a Childhood Disability Evaluation Form and opined that Claimant had no limitation in acquiring and using information, attending and

5

completing tasks and interacting and relating with others, caring for himself and in health and physical well being, but that he had a marked limitation in moving about and manipulating objects because of shortness of breath and Blounts' disease. (Tr. at 217-22.)

The record includes treatment notes from Steven A. Lovejoy, M.D. dated March 10, 2003, through February 23, 2004. (Tr. at 224-48.) On June 12, 2003, Dr. Lovejoy recommended a tibial osteotomy and placement of a Taylor spatial frame for treatment of Blounts' disease. (Tr. at 247-48.) Claimant underwent this procedure on June 17, 2003. (Tr. at 243-44.) On July 6, 2003, Claimant's mother reported to another physician, John O. Mullen, M.D., that Claimant had a lot of pain associated with wearing his strap-on boot. Dr. Mullen instructed Claimant to take off the boot. (Tr. at 239.) On July 7, 2003, Claimant underwent correction of the tibia vara under anesthesia after he did not tolerate the Taylor special frame. (Tr. at 237-38.) On July 18, 2003, Jeffrey Shook, D.P.M., noted that Claimant was doing "okay. He is just having a little bit of pain with his left leg." (Tr. at 234.) On July 25, 2003, a treatment note indicates Claimant had "[o]verall good progress." (Tr. at 233.) On August 4, 2003, Dr. Lovejoy instructed Claimant to continue weight bearing as tolerated. (Tr. at 232.) On August 18, 2003, Dr. Lovejoy decided to remove the frame because a callus was forming. (Tr. at 231.) On August 22,

6

2003, Claimant's mother called several times about a stinging sensation in Claimant's leg. Claimant's cast looked good, and Claimant was able to ambulate without difficulty using a walker and a cast. (Tr. at 229.) On September 29, 2003, x-rays showed Claimant's osteotomy had healed, and his correction looked good. Dr. Lovejoy wanted Claimant to be full weight bearing. He also noted Claimant would require another two months of home bound schooling. (Tr. at 228.) On October 13, 2003, Dr. Lovejoy noted that a cast sore on Claimant's heel had shrunk considerably. (Tr. at 227.) On November 10, 2003, Claimant walked unaided, but had a bit of a limp. (Tr. at 226.) On January 5, 2004, Dr. Lovejoy noted Claimant had been to the emergency room about his heel sore. Dr. Lovejoy recommended that Claimant continue physical therapy. He recommended Claimant continue homebound schooling for two more months. (Tr. at 225.) On February 23, 2004, Claimant's heel had healed. Claimant continued to walk with a limp. Claimant was scheduled to return to school on April 5, 2004. Dr. Lovejoy opined that this "is appropriate with no limitations." (Tr. at 224.)

The record includes treatment notes and other evidence dated February 27, 2002, to June 1, 2004, from James P. Clark, II, M.D., who treated Claimant's asthma. (Tr. at 249-80.) On February 27, 2002, Dr. Clark wrote that Claimant has "fairly significant allergic respiratory disease as is evidenced by his skin tests. I think he has mild to moderate persistent asthma as well." (Tr. at

7

251.) On July 27, 2004, Dr. Clark wrote that Claimant's parents felt "that home bound [schooling] would allow him to have much fewer asthma exacerbations and possibly prevent hospitalizations." (Tr. at 250.) Dr. Clark recommended "home bound [schooling] for the first half of the school year and I have discussed with his parents that we could re-evaluate him around the holidays to see if perhaps he could go back into the school system for the second half of the school year." (Tr. at 250.)

A State agency medical source completed a Childhood Disability Evaluation Form on June 10, 2004, and opined that Claimant had no limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, caring for himself and no limitation in health and physical well being. Claimant had less than a marked limitation in moving about and manipulating. (Tr. at 281-86.)

The record includes additional treatment notes and other evidence from Dr. Clark dated February 1, 2005, through May 17, 2005. (Tr. at 291-95.) On March 30, 2005, Dr. Clark wrote that Claimant should "have a trial back in the school system and I am requesting that he be discharged from the home bound program. I think for his asthma and allergies he is on an appropriate medication regimen. I feel that John does need the socialization associated with attending school and I think he is well enough at this point to return to school. I do feel that strenuous physical

8

exercise is not appropriate for John however limited physical activity will hopefully help his obesity." (Tr. at 295.) On April 29, 2005, Claimant called Dr. Clark's office requesting that he again recommend home schooling. Dr. Clark declined, indicating that he felt Claimant should be in school. (Tr. at 293.)

On May 17, 2004, Robert Letton, Jr. saw Claimant for a small hemangioma on his anterior chest. Dr. Letton noted that "[t]he family is very paranoid about him bleeding to death from this, although I do not think that it is quite that large, but they do wish to have it excised as soon as possible. I have scheduled him for surgery next week." (Tr. at 296.) Claimant underwent removal of the hemangioma on May 26, 2005, and tolerated the surgery well. (Tr. at 304.)

An August 18, 2005, a treatment note from Dr. Clark indicates Claimant's mother again wished for him to be homebound schooled. Dr. Clark agreed to approve homebound instruction, but only for the fall semester. (Tr. at 312.)

In evidence submitted to the Appeals Council, C. Edwin Childers, Jr., M.D. wrote on June 10, 2005, that Claimant's condition requires continuous care from his father, including assisting in activities of daily living. (Tr. at 316.) Dr. Childers wrote similar letters on May 15, 2003, October 24, 2003, January 9, 2004, August 27, 2004, and June 2, 2005. (Tr. at 317-18, 321, 323, 225.) On May 11, 2004, Dr. Childers wrote that

9

Claimant has obesity and that he "can take physical education; however, it should be tailored more to what he is capable of doing. He is obviously limited somewhat by his obesity." (Tr. at 320.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to properly evaluate the evidence in regard to childhood disability; (2) the ALJ failed to consider Claimant's impairments in combination, including Claimant's recurrent urinary tract infections, problems with depression and ear infections; and (3) the ALJ failed to properly develop the record regarding Claimant's complaints of depression. (Pl.'s Br. at 13-17.)

The Commissioner argues that (1) substantial evidence supports the ALJ's finding that Claimant's impairments did not meet, medically equal or functionally equal a listed impairment; (2) the ALJ was not required to consider limitations arising from impairments that were not demonstrated by reliable evidence of record; and (3) the ALJ was not required to order a consultative psychiatric examination because the evidence of record did not show significant limitations arising from a mental impairment. (Def.'s Br. at 7-14.)

The court finds that the ALJ properly evaluated the evidence of record in keeping with the applicable regulation related to review of childhood disability and, his findings are supported by

10

substantial evidence. Claimant did not meet any of the listings, and as a result, his case turns on whether he can show functional equivalence to a listed impairment. To qualify for benefits under the functional equivalence analysis, Claimant must have marked limitations in two domains of functioning or an extreme limitation in one domain. 20 C.F.R. § 416.926a(a). In assessing a claimant's functional limitations, the Commissioner will consider how a claimant functions in the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. Id. at 416.926a(b)(1)(i)-(vi).

In his decision, the ALJ found that Claimant had no limitations in acquiring and using information, attending and completing tasks, interacting and relating with others and caring for himself. The ALJ found that Claimant has less than marked limitations in moving about and manipulating objects and in health and physical well-being. (Tr. at 19-20.) Because Claimant did not have marked limitations in at least two areas or an extreme limitation in at least one area, the ALJ concluded that Claimant did not functionally equal a listed impairment.

The ALJ's findings about Claimant's ability to function in the six domains listed above are supported by substantial evidence cited above. In particular, the ALJ's findings are supported by

11

Dr. Reddy, a State agency medical source, as well as Dr. Clark and Dr. Lovejoy, both of whom treated Claimant over an extended period. In addition, Claimant's kindergarten teacher indicated that Claimant has no problems acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects and caring for himself. (Tr. at 74-81.)

Claimant cites to the testimony of his mother about the limitations caused by Claimant's asthma, the fact that he was in homebound schooling the first half of the school year and Dr. Childers' opinion that Claimant's physical education must be tailored to what he is capable of doing, all in support of the argument that Claimant's impairments are functionally equivalent to a listed impairment. (Tr. at 320.) The ALJ appropriately found some limitation because of Claimant's asthma and obesity. Furthermore, while Claimant received homebound schooling for some period of time (first due to his leg condition and later, due to asthma), the medical evidence of record from Dr. Clark makes clear that the requests for homebound schooling were mostly made by Claimant's parents, and that although Dr. Clark ultimately ordered homebound schooling for some period of time, he believed Claimant could and should be in school. In short, the substantial evidence of record supports the ALJ's finding that while Claimant had less than marked limitations in two of the six domains of functioning,

12

these limitations were neither marked nor severe, such that he functionally equaled a listing.

The court further finds that the ALJ considered Claimant's impairments in combination in keeping with 20 C.F.R. § 416.923 (2005). This is evidenced throughout the ALJ's decision, but particularly in the ALJ's evaluation of the functional limitations resulting from his severe impairments. (Tr. at 18-20.) Claimant asserts that the ALJ did not consider that Claimant suffers "recurrent urinary tract infections, problems with depression and ear infections. He further ignored the fact that the plaintiff's mother testified that his activities were limited due to his asthma as far as the weather." (Pl.'s Br. at 15-16.) As the summary of medical evidence above reveals, most of the conditions cited above are not well documented in the medical evidence. There is little to no evidence that these conditions, other than asthma, affected Claimant's ability to function. Regarding Claimant's asthma, the ALJ adequately considered this condition and its impact on Claimant's ability to function.

Finally, the court finds that the ALJ adequately developed the record in this case and was under no obligation to order a consultative examination to determine "whether or not the plaintiff suffered from depression." (Pl.'s Br. at 16.) Regarding the ALJ's duty to refer a claimant for a consultative examination, 20 C.F.R. § 416.917 (2005) provides that

13

> [i]f your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests.

The only mention the court could locate of depression in the record was Claimant's mother's testimony at the administrative hearing. (Tr. at 344.) There is no medical evidence even suggesting the presence of depression. In such a scenario, the court cannot conclude that the record was lacking on this issue and in need of further development.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings is DENIED, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: March 22, 2007

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge

14